## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

LARRY ADDISON                            CIVIL ACTION

VERSUS                                   NO.  07-3069

STATE OF LOUISIANA                  SECTION "B"(2)

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Larry Addison, is incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2]   On February 5, 2003, Addison and a co-defendant, Lionel G. Christophe III, were charged by bill of information in Jefferson Parish with one count of possession with intent to distribute marijuana.[3]   Each was also charged in separate counts as felons in possession of a firearm found in the car when they were stopped.   The bill of information was later amended on January 6, 2004, to add a fourth count in which Addison was charged again as a felon in possession of a weapon found at his home.[4]   The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> Based on information received from a confidential informant (CI), on January 4, 2003, Agent Pat Digiovanni conducted an investigation of illegal drugs on Wiegand Drive in Bridge City.   According to the CI, an individual inside of a white Dodge pickup would be delivering a quantity of marijuana to a location on the 600 block of Wiegand Drive.   The CI also provided a license plate number of the vehicle, a physical description of the driver and the passenger's first name, "Larry."   As Agent Digiovanni arrived at the location at about 9:00 p.m., which was about thirty to forty-five minutes after receiving the information from the CI, he observed such a vehicle pulling off. The vehicle's license plate number was checked, and it was determined that the owner of the vehicle was Lionel Christophe.
>
> The vehicle was stopped on Wiegand Drive. Deputy James Mattews, Deputy Kay Horn and Sergeant Sue McCartney were involved in the stop.   After conducting a criminal history check on the passenger, defendant, and discovering an outstanding

_____

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 5, Bill of Information, 2/5/03.

[4]Id., hand written amendment dated 1/6/04.

attachment for his arrest, defendant was arrested.  After his arrest, defendant was searched by Deputy Mattews who found four bags of marijuana in his pants' pocket. Agent Digiovanni and Deputy Mattews identified defendant in court.  No drugs were found on the driver of the vehicle.

The vehicle was subsequently searched.  An ice chest was found inside the vehicle on the seat between the driver and the passenger, State's Exhibit 5.  Inside this ice chest, which was ajar, was State's Exhibit 2B, a clear plastic bag which contained marijuana.  In Christophe's vehicle, 193 grams of marijuana were found.  A .45 caliber pistol in a nylon case was also found inside of the vehicle on the floorboard in arm's reach of defendant.

The CI informed Agent Digiovanni of the address of defendant's residence.  Agent Digiovanni went to the address and obtained defendant's consent to search the residence.  Defendant had a key to the residence in his pocket which was used to gain entry.

A search was performed of the residence and additional quantities of marijuana were found, as well as a cigar box with drug paraphernalia and paperwork addressed to defendant, a Hibernia Bank bag containing defendant's payroll stubs and letters addressed to defendant and a sawed-off shotgun wrapped in clothing in a laundry basket.  In the bedroom, officers also found a box of sandwich bags similar to the ones found on defendant containing marijuana and a scale.  Agent Digiovanni testified that these items were consistent with distribution and that they found nothing consistent with the use of marijuana in the vehicle or at the residence.

Deputy Mattews testified that he searched his vehicle once he got to the Bureau and when he lifted the backseat of his vehicle where defendant was sitting he found a small black baggie with green vegetative matter under the seat.  Charles Kron, an expert in the field of analysis of controlled dangerous substances, analyzed substances in regards to this case and testified as to his findings.  He explained that Specimen 1 consisted of four clear plastic baggies with green designs containing green vegetative material.  This material tested positive for marijuana and contained a gross weight of 6.1 grams.  Specimen 2 was one large plastic bag which contained seven smaller clear plastic bags containing vegetative material.  Material from four bags picked randomly were tested and this material tested positive for marijuana and had a gross weight of 172.86 grams.  He described Specimen 7 as a plastic see-through purse.  Specimen 7A consisted of a plastic bag containing numerous empty plastic bags which were not analyzed.  Specimen 7B consisted of a plastic bag containing vegetative material which tested positive for marijuana and had a gross weight of 6.2 grams.  Specimen 7C, a plastic bag containing four small Ziploc plastic bags each containing vegetative material, tested positive for marijuana with a gross weight of 6.36 grams.  Specimen 10, a black clear plastic baggie with vegetative

3

material, tested positive for marijuana and had a gross weight of 1.5 grams.  He concluded that the gross weight of all the marijuana he received and analyzed was about 200 grams.

Lieutenant Bruce Harrison testified as an expert in the use, packaging and distribution of illegal narcotics.  Lieutenant Harrison testified that the evidence he was shown in this case was consistent with possession with intent to distribute marijuana.

State v. Addison, 920 So.2d 884, 887-89 (La. App. 5th Cir. 2005); State Record Volume 3 of 5, Louisiana Fifth Circuit Court of Appeal Opinion, 05-KA-378, pages 3-5, December 27, 2005.

Addison was tried separately[5] before a jury on January 6 and 7, 2004, and he was found guilty of count one, possession with intent to distribute marijuana, and count four, felon in possession of the firearm found at his home.[6]  The jury found him not guilty as to count two, felon in possession of the firearm found in the car.

At a hearing held on January 15, 2004, the state trial court denied Addison's motions for arrest of judgment, for new trial and for post-verdict judgment of acquittal.[7]

---

[5]Christophe entered a plea of guilty on June 24, 2004, to an amended charge of possession of marijuana.  St. Rec. Vol. 4 of 5, Plea Minutes (Christophe), 6/24/04; Waiver of Constitutional Rights Plea of Guilty, 6/24/04.  The State dismissed count three of the original bill of information which had charged Christophe as a felon in possession of a weapon.

[6]St. Rec. Vol. 1 of 5, Trial Minutes (2 pages), 1/6/04; Trial Minutes (2 pages), 1/6/04; Jury Verdict, 1/8/04 (verdict returned at 1:00 a.m., 1/8/04); Trial Transcript, 1/6/04; St. Rec. Vol. 2 of 5, Trial Transcript, 1/7/04; St. Rec. Vol. 3 of 5, Trial Transcript (continued), 1/7/04.

[7]St. Rec. Vol. 1 of 5, Motion in Arrest of Judgment, 1/8/04; Motion for New Trial, 1/9/04; Motion for Post-Verdict Judgment of Acquittal, 1/14/04; St. Rec. Vol. 3 of 5, Hearing Transcript, 1/15/04.

The state trial court sentenced Addison on February 2, 2004, to serve 10 years at hard labor on count one, with a $10,000 fine and $50 jury fee.[8]  As to count four, the court sentenced him to serve 10 years in prison without benefit of parole, probation or suspension of sentence, and assessed a fine of $2,000 plus costs.[9]  Addison's counsel moved orally for  reconsideration of the sentence, and the court denied the motion. Addison's counsel also notified the court of the intent to appeal, but did not file a timely written notice as he indicated to the state trial court he would do.

Accordingly, Addison's conviction became final thirty days later, on March 3, 2004, because he did not file a notice of appeal.  See Cousin v. Lensing, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's conviction became final at the end of the five-day period for filing a notice of appeal under La. Code Crim. P. art. 914[10]); Roberts v. Cockrell, 319 F.3d 690 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process); McGee v. Cain, 104 Fed. Appx. 989, 991 (5th Cir. 2004) (same).

---

[8]St. Rec. Vol. 1 of 5, Sentencing Minutes, 2/2/04; St. Rec. Vol. 3 of 5, Sentencing Transcript, 2/2/04; Sentencing Minutes Nunc Pro Tunc, 11/30/06.

[9]Id.

[10]La. Code Crim. P. art. 914 requires a criminal defendant to move for leave to appeal within thirty days of the order or judgment that is being appealed or of a ruling on a timely motion to reconsider a sentence. Failure to move timely for appeal under Article 914 renders the conviction and sentence final at the expiration of the period for filing the motion for appeal.  State v. Counterman, 475 So.2d 336, 338 (La. 1985).

More than 9 months later, on December 30, 2004, Addison's counsel filed a motion for leave to file an out-of-time appeal.[11]  The state trial court granted the motion and set a return date of March 30, 2005.[12]

On appeal, Addison's counsel raised four grounds for relief:[13] (1) The state trial court erred by failing to suppress evidence gathered as the result of an illegal seizure at Addison's house. (2) The state trial court should have granted a mistrial when the State introduced the hearsay testimony of the confidential informant. (3) The state trial court erred by accepting Lieutenant Harrison as an expert in the field of distribution of drugs. (4) The state trial court should have granted the motion to quash the prior conviction used as the basis for the charge of felon in possession of a weapon.

On December 27, 2005, the Louisiana Fifth Circuit affirmed the convictions and sentences.[14]  The Louisiana Fifth Circuit found that Addison's first and second claims were without merit and his third and fourth claims were not properly preserved for

---

[11]St. Rec. Vol. 1 of 5, Motion for Out-of-Time Appeal and Motion to Appoint Louisiana Appellate Project, 12/30/04.

[12]St. Rec. Vol. 1 of 5, Trial Court Order, 1/14/05.

[13]St. Rec. Vol. 3 of 5, Appeal Brief, 05-KA-0378, 5/3/05.

[14]State v. Addison, 920 So.2d at 884; St. Rec. Vol. 3 of 5, 5th Cir. Opinion, 05-KA-378, 12/27/05.

appellate review.[15]   The Louisiana Fifth Circuit also directed the state trial court to correct its sentencing minutes to reflect that Addison was convicted of possession with intent to distribute marijuana and the state trial court complied.[16]

The Louisiana Supreme Court denied Addison's subsequent and timely writ application without reasons on November 30, 2006.[17]  More than three months later, on February 10, 2007, Addison submitted a request for reconsideration of that order which was filed with the Louisiana Supreme Court on February 27, 2007.[18]  The request was denied on March 23, 2007.[19]

## II.   FEDERAL HABEAS PETITION

On May 17, 2007, Addison filed a pro se petition for federal habeas corpus relief raising three grounds for relief:[20] (1) The state trial court erred by failing to suppress evidence gathered as the result of an illegal search and seizure. (2) The state trial court should have granted a mistrial when the State introduced the hearsay testimony of the

---

[15]Id.

[16]Id.; St. Rec. Vol. 3 of 5, Sentencing Minutes Nunc Pro Tunc, 11/30/06.

[17]St. Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 06-KO-1087, 5/11/06; St. Rec. Vol. 4 of 5, La. S. Ct. Letter, 2006-KO-1087, 5/11/06 (postal metered 1/21/06); State v. Addison, 941 So.2d 36 (La. 2006); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2006-K-1087, 11/9/06.

[18]St. Rec. Vol. 5 of 5, Request for Reconsideration, 06-KO-1087, 2/27/07 (postmarked 2/12/07, signed 2/10/07).

[19]St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2006-KO-1087, 3/23/07.

[20]Rec. Doc. No. 1.

confidential informant. (3) The state trial court erred by accepting Lieutenant Harrison as an expert in the field of distribution of drugs. (4) The state trial court should have granted the motion to quash the prior conviction.

The State filed a response in opposition to the petition, alleging that Addison's first claim is precluded from federal habeas corpus review and his second claim is without merit.[21]  The State further argues that Addison's third claim is in part without merit and in part procedurally barred from federal review.  Finally, the State contends that Addison's fourth claim is also procedurally barred from federal review.

Addison filed a reply to the State's opposition response arguing that the State's opposition should be rejected.[22]

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[23] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198

---

[21]Rec. Doc. No. 9.

[22]Rec. Doc. No. 10.

[23]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

(5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Addison's petition, which, for reasons discussed below, is deemed filed in this federal court on May 16, 2007.[24]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; <u>i.e.</u>, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  <u>Nobles v. Johnson</u>, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State has not challenged the timeliness of Addison's federal petition because it has considered the conviction to be final at the conclusion of the state out-of-time appeal.  However, the fact that Addison was granted an out-of-time appeal does not change the finality of his conviction for purposes of the AEDPA's limitation period. <u>Salinas v. Dretke</u>, 354 F.3d 425, 430 (5th Cir.), <u>cert. denied</u>, 541 U.S. 1032 (2004) (the granting of a request for out-of-time review tolls the AEDPA limitations period, but it

---

[24]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. <u>Coleman v. Johnson</u>, 184 F.3d 398, 401 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1057 (2000); <u>Spotville v. Cain</u>, 149 F.3d 374, 378 (5th Cir. 1998); <u>Cooper v. Brookshire</u>, 70 F.3d 377, 379 (5th Cir. 1995).  Addison's petition was filed by the clerk of court on June 17, 2007.  Addison dated his signature on the petition's affidavit of mailing on May 16, 2007.  Rec. Doc. No. 1, p. 18.  This is the earliest date on which he could have delivered the pleadings to prison officials for mailing.

does not restart the running that period); see also, McGee, 104 Fed. Appx. at 991-992

(applying Salinas rationale to Louisiana out-of-time writ application).

Instead, the out-of-time appeal is only considered in the tolling calculation under

the AEDPA.  Id.  Thus, I conclude that Addison's conviction became final on March 3,

2004, when he did not timely pursue his direct appeal.  Roberts, 319 F.3d at 690 (an

appeal is final when the state defendant does not timely proceed to the next available step

in an appeal process); McGee, 104 Fed. Appx. at 991.

The AEDPA requires a petitioner to bring his Section 2254 petition within one

year of the date his conviction became final.[25]  Duncan v. Walker, 533 U.S. 167, 179-80

---

[25]The statute of limitations provision of the AEDPA provides for other triggers which do not
apply here:
> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus
> by a person in custody pursuant to the judgment of a State court.  The limitation period
> shall run from the latest of--
>> A.    the date on which the judgment became final by the conclusion
>>       of direct review or the expiration of the time for seeking such
>>       review;
>> B.    the date on which the impediment to filing an application created
>>       by State action in violation of the Constitution or laws of the
>>       United States is removed, if the applicant was prevented from
>>       filing by such State actions;
>> C.    the date on which the constitutional right asserted was initially
>>       recognized by the Supreme Court, if the right has been newly
>>       recognized by the Supreme Court and made retroactively
>>       applicable to cases on collateral review;  or
>> D.    the date on which the factual predicate of the claim or claims
>>       presented could have been discovered through the exercise of
>>       due diligence.
> (2) The time during which a properly filed application for State post-conviction or other
> collateral review with respect to the pertinent judgment or claim is pending shall not be
> counted toward any period of limitation under this subsection.  28 U.S.C. § 2244(d).

(2001).  Under a literal application of the statute, Addison had until March 3, 2005, to file his federal habeas corpus petition, which he did not do.  His petition would therefore be untimely unless he is entitled to tolling in one of the manners provided under the law. 28 U.S.C. § 2244(d)(2); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000).

Under a statutory tolling review, the one-year limitations period began to run on March 4, 2004, the day after his conviction became final, and did so for 301 days, until December 30, 2004, when Addison's counsel filed a motion for an out-of-time appeal. Under a generous application of the law, the limitations period remained tolled from that date until November 9, 2006, when the Louisiana Supreme Court denied the writ application following the out-of-time appeal.

Under this calculation, the AEDPA filing period began to run again on November 10, 2006, and did so for the remaining 64 days, until January 12, 2007, when it expired. Addison did not file any other pleadings or seek state post-conviction or other collateral review in the state courts during that time period.  Under this view, therefore, the AEDPA limitations period expired before the instant federal petition was filed.

The United States Supreme Court has held that "district courts are permitted, but not obligated, to consider sua sponte the timeliness of a state prisoner's habeas petition." Day v. McDonough, 547 U.S. 198, 209 (2006).  "[B]efore acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions

. . .  and assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issues, and 'determine whether the interests of justice would be better served' by addressing the merits or by dismissing the petition as time barred." Id. 547 U.S. at 210 (emphasis added) (citations omitted).

While I find that Addison's petition is not timely filed, I also conclude for the following reasons that the interests of justice would be better served by application of the doctrine of equitable tolling and this court's review of the substance of Addison's claims.

The United States Supreme Court has held that the one-year period of limitations in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing.  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999).  Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  Pace, 544 U.S. at 417-19; Cousin, 310 F.3d at 848; see also, See United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied,

529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In this case, the record reflects that Addison's apparent inaction that necessitated the out-of-time appeal probably resulted from counsel's representations to the state trial court regarding his direct appeal, and this situation accounted for the delay which caused his AEDPA filing period to run without tolling for ten months. Specifically, at the sentencing hearing held on February 2, 2004, Addison's trial counsel advised the state trial court that he would be filing a motion for appeal on Addison's behalf.[26]  Addison was present at this hearing and must have heard his counsel and the state trial court express that the appeal would be filed and counsel would be appointed.[27]  Addison

---

[26]St. Rec. Vol. 3 of 5, Sentencing Transcript, p. 6, 8, 2/2/04.

[27]Id.

13

apparently accepted this representation and did nothing on his own, relying upon these representations, until he contacted the Louisiana Appellate Project, after hearing nothing further about the promised appeal, several months before his trial counsel filed the motion for an out-of-time appeal.[28]

In my view, these circumstances may constitute grounds for equitable tolling since Addison had reason to believe, based on the exchange between his counsel and the state trial court at the sentencing hearing, that his appeal had been filed.  See Vineyard v. Dretke, 125 Fed. Appx. 551 (5th Cir. Mar. 14, 2005); Mendez v. U.S., 2007 WL 2088382 (W.D. Tex. Jul. 17, 2007) (citing United States v. Wynn, 292 F.3d at 330).

Applying the Supreme Court's standard in Day, I find that the interests of justice would be better served if this court does not sua sponte raise the issue of timeliness and instead addresses the substance of Addison's claims.  To that end, the State has asserted that two of Addison's claims are in procedural default, one is not subject to federal review and the last claim is without merit.

IV.    PROCEDURAL DEFAULT

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both

---

[28]St. Rec. Vol. 1 of 5, Motion for Out of Time Appeal, 12/30/04 (Addison's letter to Louisiana Appellate Project attached).

independent of the federal claim and adequate to support that judgment.  Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.  When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion.  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

The record demonstrates that two of Addison's claims, No. 3 concerning Lt. Harrison's expertise in the field of illicit drug distribution and No. 4 concerning the motion to quash his prior conviction, are procedurally barred from federal habeas corpus review.  Addison raised his third claim, challenging the state trial court's acceptance of Lieutenant Harrison as an expert, in the out-of-time appeal.  The last reasoned decision on the issue was that of the Louisiana Fifth Circuit, which found that the claim was not preserved for appeal because no contemporaneous objection was made at trial.  The court

15

also commented that the trial court did not abuse its discretion in finding Lieutenant Harrison to be an expert and that Addison failed to show that Lieutenant Harrison lacked the qualifications to be qualified as an expert.[29]

Addison also raised his fourth ground for relief, claiming that the state trial court should have quashed his prior conviction in the multiple offender proceeding, in the out-of-time appeal.  The Louisiana Fifth Circuit found that this claim was not preserved for appeal because no motion to quash had been filed in the state trial court as was required by La. Code Crim. P. art. 536.[30]

A.   INDEPENDENT AND ADEQUATE

For the foregoing state law procedural bars to prevent review by this federal habeas court, the bar must be independent and adequate.  A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  Amos, 61 F.3d at 338.  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  Glover, 128 F.3d at 902.

---

[29]The State addresses part of this issue on the merits and part as procedurally defaulted. However, the Louisiana Fifth Circuit made clear that it found "the defendant did not preserve this issue for appeal and this assignment of error will not be addressed." (emphasis added) State v. Addison, 920 So.2d at 898; St. Rec. Vol. 3 of 5, 5th Cir. Opinion, 05-KA-378, p. 22, 12/27/05.

[30]La. Code Crim. P. art. 536 provides that "A motion to quash shall be in writing, signed by the defendant or his attorney, and filed in open court or in the office of the clerk of court. It shall specify distinctly the grounds on which it is based. The court shall hear no objection based on grounds not stated in the motion."

1.    <u>CONTEMPORANEOUS OBJECTION RULE</u>

The principal Louisiana statutory provision requiring contemporaneous objection is La. Code Crim. P. art. 841(A), which provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." <u>Tasco v. Butler</u>, 835 F.2d 1120, 1124 (5th Cir. 1988).   It is well-settled that Louisiana's contemporaneous-objection rule is an independent and adequate state procedural ground, regularly applied by the Louisiana courts.  <u>Duncan v. Cain</u>, 278 F.3d 537, 541 (5th Cir. 2002) (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87-88 (1977)); <u>Marshall v. Cain</u>, 2006 WL 2414073 (E.D. La. Aug. 18, 2006) (Zainey, J.).  When the state court relies on this procedural default in dismissing a claim, as it did here, the claim is barred from federal habeas review.  <u>Duncan</u>, 278 F.3d at 541; <u>Riles v. McCotter</u>, 799 F.2d 947, 953 (5th Cir. 1986) (challenge to state's expert was procedurally barred from federal habeas review where state applied procedural default for failure to object at trial).

2.    <u>LA. CODE CRIM. P. ART. 536</u>

Pursuant to La. Code Crim. P. art. 536, a motion to quash must be in writing and the failure to file a written motion is a waiver of the assignment of error.  <u>State v. Jordan</u>, 774 So.2d 267, 273 (La. App. 5th Cir. 2000) (<u>State v. Arabie</u>, 507 So.2d 859 (La. App. 5th Cir. 1987)).  This mandate is clearly based on Louisiana law.  My research reflects that Louisiana courts regularly, and evenhandedly, apply this rule to bar claims not filed

17

by written motion to quash.  See, e.g., State v. Dauzart, 960 So.2d 1079, 1084 (La. App. 5th Cir. 2007); State v. Foy, 853 So.2d 689, 691 (La. App. 4th Cir. 2003); State v. Jordan, 836 So.2d 609, 611 (La. App. 5th Cir. 2002); State v. Jarrell, 2007 WL 2726718 (La. App. 1st Cir., September. 19, 2007) (citing State v. Howell, 525 So.2d 283, 284 (La. App. 1st Cir.1988) (an oral motion to quash does not comply with the provisions of Art. 536 and it cannot be considered.)).

The state court's ruling was expressly independent of federal law and rested solely on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.  The claim, therefore, is barred from federal habeas review.  See Duncan, 278 F.3d at 541.

B.   CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  Glover, 128 F.3d at 902 (citing Coleman, 501 U.S. at 731-32); Amos, 61 F.3d at 338-39 (citing Harris, 489 U.S. at 262; Engle v. Isaac, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  The mere fact that

18

petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. Id. at 486.

In this case, Addison has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts.  My review of the record does not support a finding that any factor external to the defense prevented Addison from raising these two claims in a procedurally proper manner.  The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice.  Ratcliff v. Estelle, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Addison's third and fourth claims are therefore procedurally barred from review by this federal habeas corpus court.  See Trest v. Whitley, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and

19

cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), <u>vacated on other grounds</u>, 522 U.S. 87 (1998).[31]

C.    <u>FUNDAMENTAL MISCARRIAGE OF JUSTICE</u>

Addison may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  <u>Hogue</u>, 131 F.3d at 497 (citing <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."  <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454 (1986); <u>accord</u> <u>Murray</u>, 477 U.S. at 496; <u>Glover</u>, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  <u>Campos v. Johnson</u>, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); <u>Nobles</u>, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.") When the petitioner has not adequately asserted his actual innocence, his procedural

---

[31]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not <u>required</u> to raise the procedural default argument sua sponte. <u>Id</u>.

default cannot be excused under the "fundamental miscarriage of justice" exception.
Glover, 128 F.3d at 903.

Addison does not present any indication and the record contains nothing that suggests his actual innocence on the underlying conviction.  His claims address alleged procedural failings in the underlying criminal proceedings, not his actual innocence.  He presents no evidence or argument of innocence that was not already presented to and resolved by the jury and the state trial court.  For these reasons, Addison has failed to overcome the procedural bar to his claims.  Addison's third and fourth claims, that the state trial court erred in accepting Lieutenant Harrison as an expert and in denying the motion to quash his prior conviction, are procedurally barred and must be dismissed with prejudice for that reason.

V.   STANDARDS OF MERITS REVIEW

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28

U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also

codifies the "presumption of correctness" that attaches to state court findings of fact and

the "clear and convincing evidence" burden placed on a petitioner who attempts to

overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and

fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state

court's decision "'was contrary to, or involved an unreasonable application of, clearly

established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir.

2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S.

849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

VI.    DENIAL OF THE MOTION TO SUPPRESS (CLAIM NO. ONE)

       Addison argues that the state trial court should have suppressed the evidence

seized as the result of Detective Digiovanni's illegal and unlawful entry into his

residence and search without a warrant.  The availability of federal habeas corpus relief

with regard to an alleged Fourth Amendment violation is greatly limited by the United

States Supreme Court's decision in Stone v. Powell, 428 U.S. 465 (1976).

       In Stone, the United States Supreme Court held "that where the State has provided

an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner

may not be granted federal habeas corpus relief on the ground that evidence obtained in

an unconstitutional search or seizure was introduced at his trial."  Id. at 494.  A "full and

23

fair hearing means that 'where there are <u>facts</u> in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court.'" <u>Davis v. Blackburn</u>, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting <u>O'Berry v. Wainwright</u>, 546 F.2d 1204, 1213 (5th Cir. 1977) (emphasis in original)).  Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded.  <u>Stone</u>, 428 U.S. at 494-95 n.37; <u>Bell v. Lynaugh</u>, 828 F.2d 1085, 1091-92 (5th Cir. 1987).

Thus, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits," petitioner's claim cannot succeed.  <u>Williams v. Brown</u>, 609 F.2d 216, 220 (5th Cir. 1980); <u>Christian v. McKaskle</u>, 731 F.2d 1196, 1199 (5th Cir. 1984).  The bar of <u>Stone v. Powell</u> applies despite any state trial court error in deciding the merits of petitioner's Fourth Amendment claim.  <u>Andrews v. Collins</u>, 21 F.3d 612, 631-32 (5th Cir. 1994); <u>Christian</u>, 731 F.2d at 1199 n.1; <u>Swicegood v. Alabama</u>, 577 F.2d 1322, 1324-25 (5th Cir. 1978).

The record indicates that on July 23, 2003, the state trial court held an evidentiary hearing on Addison's motion to suppress.[32]  The state trial court denied the motion, finding that Addison had given written consent to the search of the house and provided the key.[33]  Addison's counsel also raised the issue in the out-of-time appeal.  The Louisiana Fifth Circuit exhaustively examined the Fourth Amendment claim, held that Addison had given written consent to search the house and found no basis to suppress the evidence.[34]  Addison's subsequent writ application to the Louisiana Supreme Court was denied without reasons.[35]  The Louisiana Supreme Court is presumed to have relied upon the same grounds as the Louisiana Fifth Circuit's reasoned opinion.  Ylst, 501 U.S. at 802.

After reviewing the record, I find that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims."  Andrews, 21 F.3d at 631.  The State provided Addison, who was

---

[32]St. Rec. Vol. 1 of 5, Motion Hearing Minutes, 7/23/03; Hearing Transcript, 7/23/03.

[33]St. Rec. Vol. 2 of 3, Minute Entry (352-580), 7/2/03; St. Rec. Vol. 1 of 3, Trial Minutes (6 pages), 7/2/03; Trial Transcript, pp. 4-22, 7/2/03.

[34]State v. Addison, 920 So.2d at 889-892; St. Rec. Vol. 3 of 5, 5th Cir. Opinion, 05-KA-378, p. 6-11, 12/27/05.

[35]State v. Addison, 941 So.2d at 36; St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2006-KO-1087, 11/9/06.

assisted by counsel, with the opportunity to litigate his Fourth Amendment claims fully and fairly. The fact that he may disagree with the state courts' decision to deny relief is not sufficient to overcome the Stone v. Powell bar to federal review. Janecka v. Cockrell, 301 F.3d 316, 320-21 (5th Cir. 2002). Accordingly, Stone v. Powell bars review of this claim. Id.; Williams v. Collins, 16 F.3d 626, 637-38 (5th Cir. 1994). This claim for federal habeas relief must be dismissed.

VII.   DENIAL OF THE MOTION FOR MISTRIAL (CLAIM NO. TWO)

Addison alleges that the state trial court should have granted a mistrial when the State submitted hearsay evidence through the testimony of Detective Digiovanni. He specifically refers to the testimony regarding the information obtained by Digiovanni from the confidential informant, which led to the initial stop of the vehicle, in which Addison was riding. Addison suggests that the testimony was inadmissable hearsay and violated his rights under the Confrontation Clause.

The record reflects that, during trial, Addison's counsel made a continuing objection to Digiovanni's testimony in which the detective indicated what he had been told by the confidential informant.[36] The objection was based on hearsay and the fact that the informant would not be at trial. The state trial court overruled the defense objections and denied his requests for mistrial.

---

[36]St. Rec. Vol. 2 of 5, Trial Trasncript, p. 65-66, 1/7/04.

Addison raised this issue in the out-of-time appeal.  The Louisiana Fifth Circuit found the claim to be without merit.  The court held that under Louisiana evidence law the state trial court did not abuse its discretion or commit reversible error in denying the motion for mistrial.  The court also noted that Addison's counsel never moved to have the confidential informant's name disclosed or that he be brought to trial.

The court further commented that some of Digiovanni's testimony was beyond the scope of explaining his investigation and went into the hearsay details of the information received from the informant, which Louisiana law deems hearsay.  The court nevertheless determined that the introduction of this hearsay testimony was harmless error under Louisiana law.  The court resolved that the testimony did not impact the verdict, and that the State's case was based on evidence found after Addison was located, not the informant's information.  The Louisiana Supreme Court denied Addison's subsequent writ application without reasons and is presumed to have agreed with the appellate court.  Ylst, 501 U.S. at 802.

The trial court's denial of Addison's motion for a mistrial justifies federal habeas corpus relief only if it was "'error ... so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause.'"  Hernandez v. Dretke, 125 Fed. Appx. 528, 529 (5th Cir. Feb. 16, 2005) (quoting Bridge v. Lynaugh, 838 F.2d 770, 772 (5th Cir.1988)).  To obtain relief, the petitioner must show that the state trial court's error, if any, had a

"substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993). The petitioner must show that "there is more than a mere reasonable possibility that [the error] contributed to the verdict. It must have had a substantial effect or influence in determining the verdict." Woods v. Johnson, 75 F.3d 1017, 1026 (5th Cir.1996) (emphasis omitted). In determining harm based on inadmissible testimony, the court should consider (1) the importance of the witness's testimony; (2) whether the testimony was cumulative, corroborated, or contradicted; and (3) the overall strength of the prosecution's case. Sherman v. Scott, 62 F.3d 136, 142 n.6 (5th Cir.1995).

In this case, Addison alleges that Digiovanni's testimony amounted to inadmissible hearsay. Hearsay is defined by La. Code Evid. art. 801(C) as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is generally inadmissible at trial. La. Code Evid. art. 802. However, La. Code Evid. arts. 803 and 804 provide many exceptions to the hearsay rule, none of which apply to this discussion.

The Louisiana Fifth Circuit determined that some of Digiovanni's testimony regarding the information he obtained from the confidential informant may have been hearsay under Louisiana law. While this may be true, Addison has not established a constitutional violation which would warrant federal habeas corpus relief.

28

The questioned testimony given by Digiovanni referenced the specific information provided by the confidential informant.  A full reading of Digiovanni's testimony reflects that this information provided an explanation for why he was able to identify the vehicle in which Addison was riding and make the initial stop based upon suspicion of drug activity.  This information was never contradicted by any other evidence and was in fact confirmed on cross-examination.[37]

This information also was not the crucial part of Digiovanni's testimony.  The detective thereafter identified and testified regarding the actual drug and weapon evidence obtained from Addison and his co-defendant.  This evidence was the basis of the actual charges for which the jury reached a verdict.  This evidence did not come from the confidential informant but instead was elicited from Digiovanni and the other officers who testified at trial.

The evidence at trial showed that Addison and his co-defendant were in the vehicle in which 193 grams of marijuana and a .45 caliber pistol were found.  A search of Addison's person revealed four bags of marijuana in the pocket of his pants.  The officers later found more marijuana, a cigar box filled with drug paraphernalia, Addison's banking and other paperwork and a sawed-off shotgun at Addison's place of residence.

---

[37]Id., p. 97-99, 106-109.

This overwhelming evidence, linking Addison to the drug and gun charges, demonstrated his guilt.

Considering these facts, Addison has failed to demonstrate that the denial of the motion for mistrial based on hearsay evidence was in error or had a substantial impact on the verdict so as to violate due process.

To the extent Addison also claims that admission of the alleged hearsay violated his right to confrontation, he also has not established a constitutional violation.  In general, the informant's statements regarding the identification and location of the car are not the type of statements which would invoke Confrontation Clause rights.  Crawford v. Washington, 541 U.S. 36, 68-69 (2004); U.S. v. Crespo-Hernandez, 186 Fed. Appx. 419, 425 (5th Cir. May 09, 2006).

Furthermore, federal courts have recognized that "[t]he wrongful admission of hearsay evidence violates the Confrontation Clause only when the evidence was a crucial, critical or highly significant factor in the framework of the whole trial." Gochicoa v. Johnson, 118 F.3d 440, 446 (5th Cir. 1997).  In making this determination, the court must consider the following five factors.

> (1) whether the hearsay evidence was "crucial" or "devastating;"
> (2) whether prosecutors misused a confession or otherwise engaged in misconduct;
> (3) whether a joint trial or the wholesale denial of cross-examination was involved;

(4) whether the most important prosecution witness, as well as other
prosecution witnesses, was available for cross-examination; and
(5) the degree to which the hearsay evidence is supported by indicia of [its]
reliability.

Id. (citations omitted).

The most important factors are the first and the last.  Id.  As to the first factor,
"[t]he determination of whether the evidence is 'crucial' or 'devastating' . . . recognizes
that the erroneous admission of unreliable hearsay may nonetheless be harmless in light
of other evidence at trial; by examining whether hearsay was 'crucial' or 'devastating,'
the court seeks to determine whether the impermissible hearsay evidence was sufficiently
damaging to the defense to warrant reversal."  Gochicoa, 118 F.3d at 446-47 (citations
omitted).  The "crucial" and "devastating" prong of the test is equivalent to harmless
error.  Gochicoa v. Johnson, 238 F.3d 278, 286, 287 n.11 (5th Cir. 2000).

As to the fifth factor, "[a] statement of an unavailable witness is sufficiently
reliable only if it falls within a firmly rooted exception to the hearsay rule or if it carries
particularized guarantees of trustworthiness."  Id. at 446.  These "particularized
guarantees of trustworthiness" must be drawn from the totality of the circumstances
surrounding the making of the statement.  Idaho v. Wright, 497 U.S. 805, 820 (1990);
United States v. Ismoila, 100 F.3d 380, 393 (5th Cir. 1996).

As discussed above, the particular testimony about which Addison complains was
neither crucial nor critical to resolving the crimes charged or the actual verdict.  It

explained nothing more than why the officers were present when the co-defendant's car was stopped.

In the overall context of the trial, the information received from the informant was also proven to be reliable in that everything told to Digiovanni panned out.  Addison's counsel never questioned the veracity of the informant, nor did he question why Digiovanni found the informant to be a reliable source.  Instead, this was briefly addressed on redirect examination by the State:[38]

> Q.    So after reading that paragraph; do you recall what time this investigation took place?
> A.    Around 9:00
> Q.    Was that in the evening or the morning?
> A.    Nine o'clock at night.
> Q.    Is that around the time that you received the information from your confidential informant?
> A.    I received the information earlier, maybe 30, 45 minutes.
> Q.    Okay.  And based on your report, as well as your testimony at a hearing on a motion to suppress; was this confidential informant reliable?
> A.    He was.
> Q.    And did you corroborate the information that he had given you with regards to this investigation?
> A.    I did.

The record discloses nothing to contradict the trustworthiness of the statements made to Digiovanni by the confidential informant.  Addison's counsel had ample opportunity to challenge every aspect of Digiovanni's testimony, including the

---

[38]Id., p. 166-167.

information he received from the informant.  Addison has not established a violation of his rights under the Confrontation Clause.

For the foregoing reasons, the state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Addison is not entitled to relief on this claim.

## <u>RECOMMENDATION</u>

It is therefore **RECOMMENDED** that the petition of Larry Addison for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _____21st_____ day of December, 2007.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

34